JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SEI Investments Company

**DEFENDANTS**

John Lumley
Apex Fund Services

(b) County of Residence of First Listed Plaintiff: Montgomery County, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Fairfield, CT
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
John P. Quinn and Hilary P. Flack, 2000 Market Street, Suite 2300, Philadelphia, PA 19103, (215) 575-2718

Attorneys *(If Known)*
John Lumley, 29 Flint Rock Road, Stamford, CT 06903
Apex Fund Services, 150 E. 52nd STreet, Suite 8003, New York, NY 10022

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☒ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:
Preliminary Injunction to enjoin Defendants from violating non-compete agreement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE: 07/17/2018

SIGNATURE OF ATTORNEY OF RECORD: /s/ Hilary P Flack

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: SEI Investments Company, 1 Freedom Valley Drive, Oaks, Pennsylvania 19456

Address of Defendant: Apex Investment Services, 150 East 52nd Street, Suite 8003, New York, NY 10022

Place of Accident, Incident or Transaction: Oaks, Pennsylvania

***RELATED CASE, IF ANY:***

Case Number: ______ Judge: ______ Date Terminated: ______

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes ☐ No ☑
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes ☐ No ☑
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? Yes ☐ No ☑
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 07/17/2018 [signature] *Attorney-at-Law / Pro Se Plaintiff* 320724 *Attorney I.D. # (if applicable)*

**CIVIL: (Place a √ in one category only)**

*A. Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases *(Please specify):* ______

*B. Diversity Jurisdiction Cases:*

- ☑ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* ______
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases *(Please specify):* ______

### ARBITRATION CERTIFICATION

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Hilary P. Flack, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: 07/17/2018 [signature] *Attorney-at-Law / Pro Se Plaintiff* 320724 *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: SEI Investments Company, 1 Freedom Valley Drive, Oaks, Pennsylvania 19456

Address of Defendant: Apex Investment Services, 150 East 52nd Street, Suite 8003, New York, NY 10022

Place of Accident, Incident or Transaction: Oaks, Pennsylvania

***RELATED CASE, IF ANY:***

Case Number: ______ Judge: ______ Date Terminated: ______

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes ☐ No ☑
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes ☐ No ☑
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? Yes ☐ No ☑
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 07/17/2018 [signature] *Attorney-at-Law / Pro Se Plaintiff* 320724 *Attorney I.D. # (if applicable)*

**CIVIL: (Place a √ in one category only)**

*A. Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases *(Please specify):* ______

*B. Diversity Jurisdiction Cases:*

☑ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* ______
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases *(Please specify):* ______

**ARBITRATION CERTIFICATION**

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Hilary P. Flack, counsel of record or pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: 07/17/2018 [signature] *Attorney-at-Law / Pro Se Plaintiff* 320724 *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| SEI Investments Company | : | CIVIL ACTION |
| v. | : | |
| Apex Investment Services, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| | | |
|---|---|---|
| July 17, 2018 | Hilary P. Flack | SEI Investments Company |
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 575-2718 | (215) 575-0856 | hpflack@mdwcg.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SEI INVESTMENTS COMPANY<br><br>Plaintiff,<br><br>v.<br><br>JOHN LUMLEY and<br>APEX FUND SERVICES<br><br>Defendants. | : | NO. 18-CV-______ |

**COMPLAINT**

SEI Investments Company ("Plaintiff"), by and through undersigned counsel Marshall Dennehey Warner Coleman & Goggin, hereby files this Complaint against Defendant John Lumley and Apex Fund Services for temporary and preliminary injunctive relief from violating the terms of Lumley's non-disclosure and non-compete agreement with Plaintiff, and in support thereof states as follows:

## I. INTRODUCTION

1. The present dispute arises from Defendant Lumley's resignation as Sales Director of Plaintiff SEI's Investment Manager Services Division effective May 3, 2018.

2. Defendant Lumley resigned from Plaintiff's employment to work for a direct competitor of Plaintiff, Defendant Apex Fund Services, as a head of their products group, a position that would directly compete with SEI's business.

3. It is believed, and therefore averred that prior to and since Defendant Lumley's departure, Lumley has used the confidential trade secrets and business proprietary information obtained as Sales Director of SEI's subsidiary to contact prospective customers for the benefit of his new employer, Apex. One such prospective customer, GenStar Capital Management LLC

("GenStar"), is a registered investment adviser and prospective client of Plaintiff with over $9 billion of assets under management.

4. Defendant's acceptance of a position in direct competition with SEI and his use of confidential and business proprietary information to SEI's disadvantage are directly contradictory to Defendant's obligations under his Non-Disclosure and Non-Compete Agreement with SEI, which was signed by Defendant on December 22, 2016, in advance of his January 9, 2017 employment start date.

5. To prevent further irreparable harm from Defendant's continued violation of the Non-Disclosure and Non-Compete Agreement, SEI seeks a temporary and preliminary injunction requiring Lumley to comply with the terms of his agreement with SEI, and prohibiting Lumley from contacting SEI's customers or prospective customers, or otherwise using any business proprietary information to the advantage of his new employer, Apex.

## II. PARTIES

6. Plaintiff, SEI Investments Company is a NASDAQ listed publicly traded corporation headquartered in Oaks, PA and maintains its principal place of business at 1 Freedom Valley Drive, Oaks, Pennsylvania 19456.

7. Defendant John Lumley is an individual located at 29 Flint Rock Road, Stamford, CT 06903.

8. Defendant Apex Fund Services is a Bermuda Corporation with offices in the United States at 150 East 52nd Street, Suite 8003, New York, NY 10022, which is the office location at which Defendant Lumley will be employed.

## III. JURISDICTION AND VENUE

9. Jurisdiction exits by virtue of diversity of citizenship, 28 U.S.C. § 1332. The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000), exclusive of interest

and costs, against Lumley. Venue is proper in this district because it is the district in which the contract was executed and in which the breach of contract complained of occurred.

## IV. FACTS COMMON TO ALL COUNTS

10. SEI is a financial services company that provides, in relevant part, asset management services, investment processing, and investment operations solutions. SEI's Investment Manager Services Division provides outsourced accounting and administration services, order processing, regulatory and distribution support services to investment management firms that offer traditional and alternative products including mutual funds, exchange-traded funds (ETFs), institutional accounts and separately managed accounts ("SMA"). SEI's Investment Manager Services Division also provides comprehensive solutions to investment managers worldwide that sponsor and distribute alternative investments such as private equity ("PE") funds, across both registered and partnership structures.

11. Defendant Lumley became an employee of Plaintiff SEI on or about December 22, 2016, assuming the position of Sales Director for SEI Investment Manager Services, a wholly-owned subsidiary of SEI. (See Offer of Employment and records of Electronic Signatures, attached hereto as Exhibit "A".)

12. In his capacity as Sales Director, Mr. Lumley was entrusted with critical business proprietary information and access to SEI's sales contacts and customer list to perform one or more of the following functions:

a. Executing on assigned marketing and sales plans;

b. Identifying and pursuing new business prospects;

c. Generating proposals and quotes to asset management companies;

d. Creating and managing a sales pipeline;

e. Maintaining and understanding SEI's services and solutions for current and prospective clients; and

f. Coordinating and managing SEI's request for proposal process.

(See Job Description, attached hereto as Exhibit "B".)

13. Apex Fund Services is in the business of providing administrative services and back office operations in the investment management industry. In particular, Apex services the investment management market by providing fund accounting and administrative services including processing trades, investor relation services, and tax and audit liaison services. Apex is therefore a direct competitor of SEI in the market to provide investment management services.

14. Upon becoming Sales Director, Defendant Lumley executed an employment agreement entitled "SEI Investments Company Employee Non-Disclosure and Non-Compete Agreement." A copy of Defendant's employment agreement executed electronically on December 22, 2016 is attached hereto and marked as Exhibit "C".

15. The second paragraph of the agreements sets forth general information as to confidential information and a restrictive covenant which are more fully discussed in later sections of the agreement. The second paragraph states:

> Given the highly-confidential nature of the Company's business and the competitiveness of the markets in which it operates, the disclosure by a current or former employee to anyone of any confidential information about the Company or its customers could give rise to serious damage to the Company. Similarly, a current or former employee's solicitation of employees or clients of the Company or ownership or operation of a business that is competitive with the Company's business could result in severe damage to the Company.

Exhibit "C" at p. 1.

16. Following the aforementioned preamble, the employment agreements list various "Employee Covenants" by which the employees agreed and intended to be legally bound as a condition of employment. See Exhibit "C" at p. 1-2.

17. The listed employee covenants include, among other things, a "Covenant Not to Compete" which sets forth that:

> ...**for a period of two (2) years** after my employment terminates for any reason, I will not, directly or indirectly, either individually or with others, own, manage, operate, join, control, act as consultant to or agent for, or participate in the ownership, management, operation or control of, or be employed by **or connected in any manner with, any business** (whether in corporate, proprietorship or partnership form) that competes with the business of the Company as conducted on the date my employment terminates, including any proposed business activities in the planning stage on the date my employment terminates... this agreement not to compete will apply only to the geographic areas in which the Company maintains operations or provides products and services to customers as of the date my employment terminates.

Exhibit "C" at pp. 1-2 (emphasis added).

18. The Employment Agreement also address "Confidential Information" in stating that the employee:

> ...will have access to trade secrets and other confidential or proprietary information about the Company and its customers and potential customers ("Confidential Information"), whether or not labeled as such, including information acquired by the Company or developed in the course of the Company's operations. Such Confidential Information includes, but is not limited to, internal operating manuals, market survey data, customer data, including non-public personal information, marketing strategy, cost and pricing figures, budgets, forecasts, business plans, information concerning employees and other information concerning the Company's business that is not publicly available.

Exhibit "C" at p. 1.

19. The section as to "Confidential Information" further indicates the obligations of Defendant with respect to confidential and proprietary information:

> I agree that the disclosure of Confidential Information may damage the Company's business and that both during and after my employment with the Company, I will safeguard such Confidential Information and will not use or disclose any Confidential Information in any manner, except as required by law or with the express written consent of the Company.

Exhibit "C" at p. 1.

20. The Employment Agreement also has a non-solicitation clause, which precludes Defendant from soliciting current or proposed customers or clients of SEI within two (2) years of his employment terminating. The prohibition applies to direct and indirect solicitation. Exhibit "C", at pg. 2.

21. Through his execution of the Employment Agreement, Defendant agreed to the imposition of damages for violations of any of the aforementioned sections. The Employment Agreement specifically states that, "I agree that any violation of this Agreement shall subject me to immediate dismissal for cause and will result in damages to the Company that will **entitle the Company to all legal remedies available to it, including, without limitation, injunctive and monetary relief**[.]" Exhibit "C" at p. 2 (emphasis added).

22. The Employment Agreement does not preclude Defendant from continuing their employment in the financial services industry to the extent that such employment is not directly competitive to SEI.

23. In exchange for these conditions of employment, SEI provided the following consideration to Defendant:

(a) SEI employed Lumley in the capacity of Sales Director to its New York, New York office;

(b) SEI paid Lumley a salary and other compensation during his employment; and

(c) SEI provided appropriate facilities, support, benefits, and other good and valuable considerations.

24. SEI satisfied all conditions precedent under the employment agreement with Defendant.

25. More specifically, SEI compensated Lumley at all times during his employment with SEI and provided him with all SEI benefits, resources, systems and support at all times.

26. By virtue of his employment with SEI, Defendant had access to SEI's business proprietary information, including business model, pricing, services, customer list, prospective customer list, request for proposal responses, and business strategy.

27. Defendant resigned from SEI on May 3, 2018 and to commence employment with Apex. As noted, Apex is a direct competitor to SEI in the investment management services market.

28. As such, Defendant is in violation of his "Covenant Not to Compete" with SEI as he commenced or intends to commence employment with a direct competitor offering services nearly identical to the services offered by SEI. (See Affidavit of James Cipriano, attached hereto as Exhibit "D".)

29. Prior to resigning from SEI, Defendant had three meetings between January and February 2018 with representatives of GenStar Capital Management LLC, a registered investment adviser and affiliate of Apex. (See Exhibit "D", at pg. 1.)

30. It is believed and therefore averred that, as a result of those meetings, Defendant Lumley received an offer of employment from Apex's CEO, Peter Hughes, and decided to resign from Plaintiff SEI. (See Exhibit "D", at pg. 1.)

31. It is believed and therefore averred that Defendant Lumley disclosed or intends to disclose SEI's confidential business proprietary information to GenStar and Apex to the disadvantage of SEI.

32. It is further believed and therefore averred that Defendant Lumley has contacted or will soon contact SEI customers and prospective customers on behalf of Apex. (See Exhibit "D", at pg. 2.)

33. As such, Defendant is in violation of the various sections of his employment agreement related to confidential and proprietary information and his agreement not to solicit any current or prospective clients of SEI for a period of two (2) years after the termination of his employment with SEI.

34. Apex was made aware of the Employment Agreement and its prohibition against disclosure of confidential information and competition, but nonetheless knowingly employed Defendant in spite of the contractual language. (See Exhibit "D", at pg. 2.)

35. The SEI Investment Manager Services Division is an important part of SEI's business and Apex improper employment of Lumley, despite knowledge of Lumley's contractual obligations to SEI, has caused and threatens to cause SEI significant damages in the form of lost revenue, breach of confidential information and lost goodwill.

36. SEI has attempted to negotiate in good faith with Mr. Lumley and APEX for a reasonable resolution to this dispute, but all offers have been rejected.

## V. CAUSES OF ACTION

### COUNT I BREACH OF CONTRACT

### SEI v. Defendant Lumley

37. The allegation of Paragraphs 1 through 36 are incorporated herein by reference with the same force and effect as if set forth in full below.

38. Defendant Lumley violated, *inter alia*, the terms and conditions of his Employment Agreement with SEI. (Exhibits "A", "B" and "C", respectively).

39. As set forth above, Defendant Lumley violated and continues to violate the contractual obligations of his Employment Agreement.

40. As a consequence of the foregoing, SEI suffered and will continue to suffer irreparable harm and loss.

WHEREFORE, by virtue of the foregoing, SEI demands judgment in its favor and against Defendant in the form of preliminary and permanent injunctive relief and for monetary damages in an amount to be determined.

**COUNT II BREACH OF FIDUCIARY DUTY**

**SEI v. Defendant Lumley**

41. The allegations of Paragraphs 1 through 40 are incorporated herein by reference with the same force and effect as if set forth in full below.

42. Defendant Lumley violated the common law fiduciary duty of loyalty and the fiduciary duty arising under his employment contract in that it is believed, and therefore averred, that Defendant Lumley secretly planned to leave the employ of SEI and to deprive SEI of its confidential information learned by him while employed by SEI and to commence employment with a direct competitor of SEI in violation of his employment agreement.

43. As a consequence of the foregoing, SEI suffered and will continue to suffer irreparable harm and loss.

WHEREFORE, by virtue of the foregoing, SEI demands judgment in its favor and against Defendant Lumley in the form of preliminary and permanent injunctive relief and for monetary damages in an amount to be determined.

**COUNT III UNFAIR COMPETITION**

**SEI v. All Defendants**

44. The allegations of Paragraphs 1 through 43 are incorporated herein by reference with the same force and effect as if set forth in full below.

45. The foregoing conduct of Defendants constitutes an unfair method of competition.

46. As a consequence of the foregoing, SEI suffered and will continue to suffer irreparable harm and loss.

WHEREFORE, by virtue of the foregoing, SEI demands judgment in its favor and against Defendants in the form of preliminary and permanent injunctive relief and for monetary damages in an amount to be determined.

**COUNT IV TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**

**SEI v. Defendant Apex Fund Services**

47. The allegations of Paragraphs 1 through 46 are incorporated herein by reference with the same force and effect as if set forth in full below.

48. The foregoing conduct of Apex constitutes tortious interference with contractual relations between SEI and its employee.

49. As a consequence of the foregoing, SEI suffered and will continue to suffer irreparable harm and loss.

WHEREFORE, by virtue of the foregoing, SEI demands judgment in its favor and against Defendant in the form of preliminary and permanent injunctive relief and for monetary damages in an amount to be determined.

## V. CONCLUSION

WHEREFORE, by virtue of the foregoing, SEI demands judgment in its favor and against Defendants for monetary damages in an amount to be determined.

Respectfully Submitted,

JOHN P. QUINN, ESQUIRE
HILARY FLACK, ESQUIRE
Marshall Dennehey Warner
Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2883

Dated: July 17, 2018

# EXHIBIT

# "A"

December 16, 2016

John Lumley
29 Flint Rock Road
Stamford, Connecticut 06903

Dear John:

On behalf of SEI, we are pleased to extend this offer of employment to you to perform the role of Sales Director at SEI. The starting salary will be approximately $7,307.69 bi-weekly, which is $190,000.00 when annualized. Should you accept this offer, you will begin work as a full-time exempt employee on January 9, 2017. All new hires are required to attend New Employee Orientation. On your start date, join us in the Rotunda (Building 100) by 8:30 am where an SEI representative will meet you.

You will be eligible to participate in SEI's Sales Compensation Plan ("SC"). Sales Compensation plans are subject to executive management discretion and approval. The SC will be paid quarterly, provided you are an active employee at the time of disbursement or as otherwise required by company policy or law. The SC target for this year will be prorated based on your start date.

**All incentives and bonuses are subject to periodic review by senior SEI management, and may change accordingly.**

For the first twelve months of your employment, you will be eligible to receive a recoverable draw on your Incentive Compensation. This draw will be equal to $1,346.15 bi-weekly, which when annualized will be $35,000.00.

In addition, you will be eligible to receive a $10,000 bonus for the first 3 deals sold in 2017.

SEI provides a comprehensive benefits program for full-time employees. When you join us, you will be asked to make some important decisions based on your personal insurance needs. Therefore, please carefully review and evaluate the enclosed information. Selected and company-provided benefits are effective on the first of the month following one's start date. In addition, you will be eligible to receive paid time off in accordance with SEI's paid time off policies. Your first year's vacation allowance is three weeks pro-rated based on your start date.

Please note, you will be automatically enrolled in the SEI Capital Accumulation Plan, 401(k) retirement plan, with a three percent (3%) deferral rate unless you "Opt Out" or complete the enrollment process by selecting the deferral rate of your choice within the first 90 days of employment. The investment election for automatically enrolled deferrals is in the SEI Target Date Fund designed for Plan participants in your age range. You should also be aware that once you are enrolled in the Plan you may change your investment elections or deferral percentage.

All employees of SEI are employed at-will, and either the employee or SEI is free to terminate the employee's employment at any time, for any reason or no reason and with or without notice and with or without cause. None of these statements or documents, whether singly or combined, shall create an express or implied contract of employment for a definite period nor an express or implied contract concerning any terms or conditions of employment.

SEI retains the discretion at all times to decide whether or not to sponsor a job candidate for an appropriate temporary work visa. SEI also retains the discretion to decide whether to apply for a

temporary work permit for a current employee who may wish to change temporary visa categories. All of these decisions are dependent upon the operation of the immigration laws and regulations governing the particular situation, as well as our business needs. SEI is under no obligation—legal or otherwise—to extend an offer of employment to, or to hire, any candidate who does not possess the requisite work authorization to work at SEI at the time the offer of employment is made.

This offer of employment is contingent upon the completion of a satisfactory background check. At your earliest convenience, please send the signed offer letter to skelso@seic.com.

You will receive a follow-up e-mail outlining all the necessary requirements which must be completed prior to your start date.

This offer of employment may also be contingent upon the accuracy of the political contribution information you provided to SEI during the hiring process in accordance with SEC Rule 206(4)-5 "Political Contributions by Certain Investment Advisers" (the "Rule") (if applicable), and by signing below, you certify to the accuracy of your contribution history provided to SEI. You understand that once you become an employee of SEI you will be subject to applicable policies and procedures, including those which address limitations on political contributions under the Rule. Additionally, you understand that in the event that SEI discovers that the political contribution history you provided during the hiring process is inaccurate or incomplete, you will be subject to immediate termination.

In addition, this offer of employment is contingent upon your ability to provide original evidence of identity and work authorization acceptable under the immigration and naturalization laws, in connection with the completion of an electronic Form I-9 within three (3) business days of your hire.

As a further condition of your employment, all employees are required to execute the SEI Employee Non-Disclosure and Non-Compete Agreement.

Everyone who met with you at SEI was impressed with your experience and background. We believe that this offer represents a good career opportunity for you today, with excellent potential for your continuing personal and professional development. If you have any questions or need clarification, please do not hesitate to call me at 610-676-3825. Please initial the first page and sign below to indicate your acceptance. This offer will expire if it is not signed and returned to SEI within 7 days from the date of this letter.

Sincerely,

Suzanne

Suzanne Kelso, PHR, SHRM-CP
Senior HR Partner

Accepted by: ______________________ Date: 12/16/16

## Maintain Worker Documents: John Lumley (16949)

Add

4 items

| Worker Document | Document Category | Business Process | Comment | Attachments: File Name | Attachments: Upload Date | | |
|---|---|---|---|---|---|---|---|
| Lumley, John_Signed Offer Letter.pdf | Offer Letter / Employment Contract | Hire: John Lumley (16949) | | Lumley, John_Signed Offer Letter.pdf | 12/22/2016 05:55:54 PM | | |
| Lumley, John Application.pdf | Application | Hire: John Lumley (16949) | | Lumley, John Application.pdf | 12/22/2016 05:55:54 PM | | |
| CANON4FADBE.corp.seic.com_Exchange_01-03-2018_11-10-56.pdf | Other Documents | | 2018 Draw Extension | CANON4FADBE.corp.seic.com_Exchange_01-03-2018_11-10-56.pdf | 01/03/2018 02:40:12 PM | Edit | Delete |
| Lumley, John - Full Background.pdf | Background Check | | Full Background | Lumley, John - Full Background.pdf | 01/18/2013 01:41:15 PM | Edit | Delete |

### Reviewed Documents

Standard Documents 3 items

| Document | Effective Date | Document Attachment | Signature Type | Signed By | Signature Date | Signature Statement |
|---|---|---|---|---|---|---|
| US - PA Right and Duties | 05/09/2015 | PA Notification to Employees of Their Rights and Duties.pdf | e-signature | John Lumley (16949) | 01/04/2017 09:49:11 AM | By checking the box and clicking Submit, I intend to agree to and to sign the attached PA Notification to Employees of Their Rights and Duties. |
| US - Workers Comp | 01/01/1900 | Workers Compensation.pdf | e-signature | John Lumley (16949) | 01/04/2017 09:49:11 AM | By checking the box and clicking Submit, I intend to sign this record thereby acknowledging receipt of this document |
| US - Non-Disclosure Non Compete | 01/01/1900 | Non Disclosure Non Compete.pdf | e-signature | John Lumley (16949) | 01/04/2017 09:49:11 AM | By checking the box and clicking Submit, I intend to agree to and to sign the attached Employee Non-Disclosure and Non-Compete Agreement. |

# EXHIBIT

# "B"

# SEI Investment Manager Services

**Job Description**
**Sales Director**

New ways.
New answers.®

## Job Description

SEI Investment Manager Services, a division of SEI (www.seic.com), provides total operations outsourcing solutions to global investment managers and is a leading provider of accounting and administrative services to the investment management industry.

As a result of the continuing growth in SEI's Investment Manager Services Business, the Money Manager's Market Unit has an opening on its sales team for a Sales Director to be focused on selling SEI's complete outsourcing services to traditional investment managers. This individual will be responsible for managing a sales process for our service offering, developing a pipeline, managing client relationships and providing input as to the future direction of our business in the this market.

The responsibilities for this position may include some or all of the following:

- Execute on assigned marketing and sales plan
- Identify, qualify and pursue new business prospects
- Generate proposals and quotes
- Work with internal and external counterparts to close sales
- Build and maintain credible relationships with prospects, clients and industry "Centers of Influence"
- Develop and maintain a working knowledge of fund industry
- Develop and support sales presentation and design
- Create and manage sales pipeline
- Analyze sales territory and provide strategic plan
- Maintain contact with all firms in territory to uncover new opportunities
- Participate in regular team sales meetings and training
- Maintain and demonstrate understanding and knowledge of prospect's business needs and SEI's services and solutions
- Coordinate and manage the RFP process
- Attend industry conferences, seminars and trade shows

## Required Experiences and Skills

- B.S./B.A. in Finance, Marketing or related field
- 5+ years of experience in the Financial Services industry
- Knowledge of investment management operations
- Experience in managing sales process from lead generation to relationship management is a plus
- Experience with Miller Heiman strategic selling process a plus
- Adaptable to manage fast-paced, challenging sales environment
- Excellent interpersonal skills
- Strong organizational skills
- Excellent communication and influencing skills
- Strong analytical and critical thinking skills
- Strong PowerPoint, Word, Excel and internet skills

**Extensive travel is required**

**Physical Demands and Work Environment**

While performing the duties of this job, the work environment may require an individual to move around the office and from building to building which may expose the individual to weather conditions outside. The individual has to be able to sit or be stationary at a computer and use computers for extended periods of time and occasionally lift and/or move up to 20 pounds. The noise level in the environment is moderate and the individual must be able to communicate and exchange information with people in person and over the telephone and email.

SEI is an equal opportunity / affirmative action employer and all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, national origin, age, disability status, protected veteran status, or any other characteristic protected by law

# EXHIBIT

# "C"

# SEI INVESTMENTS COMPANY
# EMPLOYEE NON-DISCLOSURE AND NON-COMPETE AGREEMENT

SEI Investments Company and its subsidiaries (collectively, the "Company") are engaged in the business of providing outsourced asset management, investment processing and investment operations solutions to corporations, financial institutions, financial advisors and individuals to create and manage wealth.

Given the highly-confidential nature of the Company's business and the competitiveness of the markets in which it operates, the disclosure by a current or former employee to anyone of any confidential information about the Company or its customers could give rise to serious damage to the Company. Similarly, a current or former employee's solicitation of employees or clients of the Company or ownership or operation of a business that is competitive with the Company's business could result in severe damage to the Company.

## EMPLOYEE COVENANTS

As a condition of my employment by the Company and intending to be legally bound, I agree as follows:

**Confidential Information**. I acknowledge that, during the term of my employment, I will have access to trade secrets and other confidential or proprietary information about the Company and its customers and potential customers ("Confidential Information"), whether or not labeled as such, including information acquired by the Company or developed in the course of the Company's operations. Such Confidential Information includes, but is not limited to, internal operating manuals, market survey data, customer data, including nonpublic personal information, marketing strategy, cost and pricing figures, budgets, forecasts, business plans, information concerning employees and other information concerning the Company's business that is not publicly available. I acknowledge that the Confidential Information has been acquired by the Company at great expense and substantial effort and is and will be important and material and does and will contribute significantly to the Company's business and to its goodwill. As such, I agree that disclosure of Confidential Information may damage the Company's business and that both during and after my employment with the Company, I will safeguard such Confidential Information and will not use or disclose any Confidential Information in any manner, except as required by law or with the express written consent of the Company. Upon termination of my employment, I will promptly return to the Company all documents, records, data or electronic devices owned by the Company in my possession, including, but not limited to, documents, records, data or electronic devices that contain any Confidential Information. In addition, I will delete any Confidential Information from any personal electronic devices. Upon termination I agree not to access or attempt to access any Confidential Information previously available to me in the course of my employment.

**Developments**. I also agree that all inventions, designs, product developments, patent applications, copyrights and all rights acquired therein ("Developments") that I create, conceive or develop, either solely or jointly with others, which are based in whole or in part upon information I or any other employee of the Company gather in the course of, or arising from, employment by the Company shall inure to and be the property of the Company. I agree that, during and after my employment, I shall cause appropriate assignments of all Developments to be made to the Company and will cooperate with the Company in the preparation and filing of such patent applications and other documents as the Company requests.

**Covenant Not to Compete**. I agree that, during the period of my employment and for a period of two (2) years after my employment terminates for any reason, I will not, directly or indirectly, either individually or with others, own, manage, operate, join, control, act as consultant to or agent for, or participate in the ownership, management, operation or control of, or be employed by or connected in any manner with, any business (whether in corporate, proprietorship, or partnership form) that competes with the business of the Company as conducted on the date my employment terminates, including any proposed business activities in the planning stage on the date my employment terminates. This covenant shall not preclude me from employment by a business where my responsibilities and activities relate solely to a line of business that is not competitive with any unit or division of the Company for which I performed services as

an employee of the Company. After termination of employment, this agreement not to compete will apply only to the geographic areas in which the Company maintains operations or provides products and services to customers as of the date my employment terminates.

**Solicitation of Employees**. I agree that for a period of one (1) year after my employment terminates for any reason, I will not, without the prior written consent of the Company, directly or indirectly, individually or with others, as principal or agent, solicit or attempt to solicit for employment any person who is employed by the Company on the date my employment terminates, either on a full-time, part-time or consulting basis.

**Solicitation of Clients**. I agree that for a period of two (2) years after my employment terminates for any reason, I will not, directly or indirectly, individually or with others, as principal or agent, solicit or attempt to solicit any person or entity which is a customer or client of the Company, or proposed customer or client on the date my employment terminates, with respect to products or services competitive with those offered or proposed to be offered by the Company on the date my employment terminates.

**General**. Each covenant set forth above is an independent and separate covenant. In the event that the provisions of any of the covenants set forth above should ever be judicially determined to exceed the time or geographic limitations permitted by applicable law, I agree that such provisions shall be reformed to set forth the maximum limitations permitted. The invalidity of any provision or any covenant will not affect the validity or enforceability of any other provision or covenant.

I acknowledge that this Agreement does not create a contract of employment for any term and that my employment with the Company is subject to termination at will.

I agree that any violation of this Agreement shall subject me to immediate dismissal for cause and will result in damages to the Company that will entitle the Company to all legal remedies available to it, including, without limitation, injunctive and monetary relief and attorneys' fees and other legal costs. This Agreement has been made and will be at least partly performed in the Commonwealth of Pennsylvania and shall be governed by, and construed in accordance with, the substantive laws of that jurisdiction, except for its conflict of laws provision. The provisions of this Agreement will remain in full force and effect until amended in writing by the Company or until they terminate as provided herein.

I HAVE READ AND AGREE TO THIS AGREEMENT AS A CONDITION OF MY EMPLOYMENT,

this date__________________________.

____________________________
Employee Signature

____________________________
Print employee name
(Do not sign unless you have read the Agreement)

# EXHIBIT

# "D"

**AFFIDAVIT OF JAMES J. CIPRIANO**

James J. Cipriano declares the Following to be true under the penalties of perjury.

1. I am employed by SEI Investments Company ("SEI") as Managing Director. I work in SEI's Oaks, Pennsylvania office. I began working for SEI in 1998, and have worked in the company's Oaks office since that time.

2. I am responsible for new business development, which included supervisory responsibility over the work of the Director of Sales for the Investment Managers Services Division, John Lumley. Mr. Lumley electronically signed his offer from SEI and SEI's non-disclosure and non-compete agreement and accepted employment as Director of Sales for SEI's Investment Managers Services Division on December 22, 2016. Mr. Lumley began his employment at SEI shortly thereafter, on or about January 9, 2017.

3. On Monday April 30, 2018, Mr. Lumley informed me of his intention to resign as SEI's Sales Director by phone at 10:29 am. He informed me he intended to accept a position with SEI's competitor, Apex Fund Services, as Head of Product Services.

4. Mr. Lumley's job duties as Sales Director at SEI included executing marketing and sales plans, identifying and pursuing new business prospects, building and maintaining relationships with prospects, and clients, and engaging in strategic sales planning.

5. In January and February 2018, Mr. Lumley attended 3 meetings with Genstar Capital Management, LLC, a prospective SEI customer which Mr. Lumley was in the course of developing. GenStar Capital is an affiliate of Apex Fund Services. I understand from my

conversations with Mr. Lumley that Peter Hughes offered him the position of Head of Product Services at Apex following those meetings with GenStar Capital.

6. In response to Apex's offer to Mr. Lumley, I was authorized to offer Mr. Lumley an increase in his compensation if he remained with SEI. I further reminded Mr. Lumley of the terms of his non-disclosure and non-compete agreement with SEI. John requested that, in addition to the increase in salary and compensation, his non-disclosure and non-compete be reduced from 2 years non-compete and non-solicitation of customers to 6 months. He further informed me that Apex was aware of his non-compete and non-disclosure obligations and was willing to fund his defense of the non-compete if he joined Apex.

7. Mr. Lumley informed me he had accepted the position with Apex on May 3, 2018 and formally resigned from SEI that day, which resignation would be effective May 11, 2018.

8. Mr. Lumley advised me that he was uncomfortable working in the office after having resigned and requested to work remotely during his notice period. I was uncomfortable allowing Mr. Lumley to continue to access SEI's confidential information remotely so we agreed to withdraw system access immediately while maintaining the agreed-upon employment end date of May 11, 2018. SEI is concerned that Mr. Lumley intends to solicit clients and prospective clients of SEI on behalf of Apex, in direct violation of his non-compete agreement.

9. SEI has attempted to negotiate in good faith with Mr. Lumley and Apex for a reasonable solution to this dispute, but Apex and Mr. Lumley have rejected SEI's offer.

10. The value of Mr. Lumley's new business pipeline, and thus the business SEI is in jeopardy of losing, is valued at $12,000,000 to SEI and its Investment Manager Services Division.

James J. Cipriano

Dated: July 16, 2018

Sworn and subscribed before me
this 16th day of July 2018

Notary Public

Commonwealth of Pennsylvania
Notarial Seal
NANCY M DUFFY -- Notary Public
UPPER PROVIDENCE TWP, MONTGOMERY COUNTY
My Commission Expires Jun 7, 2021