**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SEI INVESTMENTS COMPANY<br><br>Plaintiffs,<br><br>v.<br><br>JOHN LUMLEY and<br>APEX FUND SERVICES<br><br>Defendants | CASE NO. 18-CV-2978 |

**ORDER**

This matter having come before the Court on Plaintiff SEI Investments Company ("SEI") Motion for a Preliminary Injunction, and

This Court having found that SEI has demonstrated a substantial likelihood of success on the merits of its claims against Defendants John Lumley and Apex Fund Services ("Apex") (Collectively referred to as "Defendants") and irreparable injury to SEI as set forth on the record this day, and for other good cause shown;

IT IS hereby ORDERED, this _____ day of ___________, 2018, that Plaintiff's Motion for Preliminary Injunction is GRANTED;

It is FURTHER ORDERED that Defendants, their agents, employees, affiliates, and any business entities and/or persons controlled directly or indirectly, by Defendants or acting on their behalf or in concert with them, are preliminarily enjoined and restrained from violating the SEI non-disclosure and non-compete agreement of December 22, 2016 ("SEI Employment Agreement"); and

Specifically, Defendants are hereby prohibited from the following:

a) Defendant Lumley shall refrain from disclosing, and Defendant Apex Fund Services shall refrain from soliciting or receiving, any information that constitutes Confidential Information under the terms of the SEI Employment Agreement;

b) Defendant Lumley shall not, himself or through a third-party, solicit, recruit or otherwise offer employment to any employee or agent of SEI in violation of the SEI Employment Agreement; and

c) Defendant Lumley shall not, himself or through a third party, offer services to any customer or potential customer, which services were also offered by SEI at the time Lumley discontinued employment with SEI;

It is FURTHER ORDERED that this preliminary injunction shall become effective when SEI posts a surety bond with the Clerk of this Court in the sum of $______________, to secure the payment of any costs and damages that may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained; and,

It is FURTHER ORDERED that this preliminary injunction shall remain in effect unless otherwise modified by an Order of this Court.

______________________________

Hon. , U.S.D.J.

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SEI INVESTMENTS COMPANY<br><br>Plaintiffs,<br><br>v.<br><br>JOHN LUMLEY and<br>APEX FUND SERVICES<br><br>Defendants | : | CASE NO. 18-CV-2978 |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to Federal Rule of Civil Procedure 65(a), Plaintiff SEI Investments Company ("SEI"), by its undersigned counsel, files this Motion for Preliminary Injunction against Defendant John Lumley and Apex Fund Services ("Apex") (Collectively referred to as "Defendants") to preclude Defendants from violating SEI's lawfully executed non-disclosure and non-compete contract signed by Lumley December 22, 2016 ("SEI Employment Agreement"), and other related acts pending final resolution of this dispute on the merits. In support of its Motion, SEI relies on the facts and law set forth in its supporting Memorandum of Law and its Complaint (attached as Exhibit 1 hereto), which SEI incorporates herein by reference.

WHEREFORE, Plaintiff SEI requests this Court enter the order attached hereto in the proposed form.

Respectfully Submitted,

/s/ Hilary Flack, Esquire

JOHN P. QUINN, ESQUIRE
Attorney I.D. No. 85239
HILARY FLACK, ESQUIRE
Attorney I.D. No. 320724
Marshall Dennehey Warner
Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2883

Dated: July 20, 2018

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SEI INVESTMENTS COMPANY<br><br>Plaintiffs,<br><br>v.<br><br>JOHN LUMLEY and<br>APEX FUND SERVICES<br><br>Defendants | : | CASE NO. 18-CV-2978 |

**PLAINTIFF SEI INVESTMENT COMPANY'S**
**BRIEF IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff SEI Investments Company ("SEI") submits this Brief in Support of its Motion for Preliminary Injunction against Defendants John Lumley and Apex Fund Services ("Apex") (Collectively referred to as "Defendants").

## I. INTRODUCTION

Plaintiff SEI is a NASDAQ-listed, publically traded corporation headquartered in Oaks, Pennsylvania that offers, in relevant part, asset management services, investment processing, and investment operation solutions to investment management and advisory companies. Defendant Lumley was employed by SEI on January 9, 2017 as Sales Director of its Investment Manager Services Division with a salary of $190,000, and additional sales commissions and incentive bonuses worth tens of thousands of dollars more in the first year of his employment. As an explicit pre-condition to this highly lucrative executive position, Lumley agreed to SEI's non-disclosure and non-compete agreement ("SEI Employment Agreement"), which Lumley executed electronically on December 22, 2016 prior to the start of his employment. To enable

his success as Sales Director, SEI provided Lumley access to critical business proprietary information, including client lists, pricing structures, internal marketing information and sales materials that are highly confidential to SEI's business and future prosperity in reliance on Lumley's promises under the SEI employment agreement.

On May 3, 2018, less than seventeen months after accepting his employment, and with total disregard for his contractual obligations to SEI, Lumley accepted a competing position as Head of Product Services with SEI's direct competitor in New York, Apex Fund Services. Apex is an investment services firm that provides similar financial, administrative, and accounting services to investment management. Upon information and belief, Apex offered this employment with knowledge of Lumley's non-compete and non-solicitation obligations to SEI, and for the apparent purpose of prejudicing SEI in the marketplace for investment management services.

Since Lumley's May 3 resignation, SEI has sought on numerous occasions to negotiate with Lumley and Apex to protect SEI's legitimate and important proprietary information from misuse by Defendants. Despite all good faith efforts, Apex and Lumley have refused to enter into any agreement limiting Lumley's unfair competition with SEI. SEI has cause to believe that Lumley has already used, and will continue to use, the trade secrets and proprietary information obtained in his position as SEI Sales Director for the benefit of his new employer, Apex, in direct violation of the SEI Employment Agreement. Lumley, aided by Apex, will cause further and irreparable harm to SEI's current business and future business prospects.

Through this Motion, SEI respectfully requests that the Court schedule this matter for a preliminary injunction hearing, and, upon completion of the hearing, enter a preliminary injunction enjoining the Defendants from violating the SEI Employment Agreement.

## II. STATEMENT OF RELEVANT FACTS

SEI's Investment Manager Services Division, a wholly-owned subsidiary of SEI, provides outsourced accounting and administration services, order processing, compliance, bookkeeping, and distribution support services to investment management firms, which offer traditional and alterative investment products – including mutual funds, exchange traded funds ("ETFs"), institutional accounts, and separately managed accounts ("SMA") – to public investors. SEI's Investment Manager Services Division also provides comprehensive solutions to investment management companies worldwide that sponsor and distribute alternative investments, such as private equity ("PE") funds, across both registered and partnership structures.

Defendant Lumley accepted employment with SEI on or about December 22, 2016, assuming the position of Sales Director for SEI Investment Manager Services. Lumley began his employment as Sales Director on or about January 9, 2017. (See Offer of Employment and Records of Electronic Signatures, attached to the Complaint as Exhibit "A"). SEI agreed to compensate Lumley with a base salary of $190,000, as well as $35,000 in sales commission draws for the first year, and a sales incentive bonus of $10,000 for his first three sales in 2017. (See Complaint, at Exhibit "A".) In his capacity as Sales Director, John Lumley was entrusted with critical proprietary business information and access to SEI's sales contacts and customer list to perform one or more of the following functions:

a. Executing on assigned marketing and sales plans;

b. Identifying and pursuing new business prospects;

c. Generating proposals and quotes to asset management companies;

d. Creating and managing a sales pipeline;

e. Maintaining and understanding SEI's services and solutions for current and prospective clients; and

f. Coordinating and managing SEI's Request for proposal process.

(See, Job Description, attached as Exhibit "B" to the Complaint). By the very nature of his employment and position at SEI, Defendant Lumley had direct and immediate access to SEI's business models, pricing, services, customer lists, prospective customer lists, requests for proposals, and business strategies. This information is considered highly confidential to SEI.

Lumley's new employer, Apex, is also in the business of providing administrative services and back office operations in the investment management industry. In particular, Apex services the same investment management market as SEI by providing fund accounting and administrative services including processing trades, investor relation services, and tax and audit liaison services for investment management companies. These services are in direct competition with SEI nationwide.

Lumley executed the SEI Employment Agreement as a precondition of his employment, a copy of which is attached to the Complaint as Exhibit "C". The second paragraph of the agreement sets forth general information regarding confidential information and restrictive covenants set forth more fully later in the agreement. The second paragraph reads as follows:

> Given the highly confidential nature of the Company's Business and the competitiveness of the markets in which is operates, the disclosure by a current or former employee to anyone of any confidential information about the Company or its customers could give rise to serious damage to the Company. Similarly, a current or former employee's solicitation of employee's or clients of the Company or ownership or operation of a business that is competitive with the Company's business could result in severe damage to the Company.

See Complaint Exhibit "C".

The SEI Employment Agreement lists various "employee covenants" which the employees agreed and intended to be legally bound as a condition of employment. See Complaint Exhibit "C" at p. 1-2. These covenants include, among other things, a "Covenant Not to Compete" which sets forth that:

> **For a period of two (2) years** after my employment terminated for any reason, I will not, directly or indirectly, either individually or with others, own, manage, operate, join, control, act as consultant to or agent for, or participate in the ownership, management, operation or control of, or be employed by or **connected in any manner with, any business** (whether in corporate, proprietorship, or partnership form) that competes with the business of the Company as conducted on the date my employment terminates, including any proposed business activities in the planning stage on the date my employment terminated… this agreement not to compete will apply only to the geographic areas in which the Company maintains operations or provides products and services to customers as of the date my employment terminates.

Complaint Exhibit "C", at pp. 1-2 (emphasis added).

A section of the SEI Employment Agreement on Confidential Information further indicates the obligations of the Defendant John Lumley with respect to confidential and proprietary information:

> I agree that the disclosure of Confidential Information may damage the Company's business and that both during and after my employment with the Company, I will safeguard such Confidential Information and will not sure or disclose any Confidential Information in any manner, except as required by law or with the express written consent of the Company.

Complaint Exhibit "C" at p. 1.

The SEI Employment Agreement further contains a non-solicitation clause, which precludes Defendant John Lumley from soliciting current or proposed customers or clients of SEI within two (2) years of his employment terminating. The prohibition applies to direct and indirect solicitation. See Complaint Exhibit "C" at pg. 2.

Through the execution of this employment agreement, Defendant Lumley explicitly agreed to the imposition of injunctive relief for violations of any of the aforementioned sections. The Employment Agreement specifically states, "I agree that any violation of this Agreement...will result in damages to the Company that will entitle the Company to all legal remedies available to it, including, without limitation, injunctive and monetary relief." Complaint Exhibit "C", p. 2.

The SEI Employment Agreement does not preclude Defendant Lumley from continuing his employment in the financial services industry, so long as such employment does not directly compete with SEI. Further, the SEI Employment Agreement only restricts such direct competition for a period of two (2) years after his final date of employment with SEI.

SEI satisfied all conditions precedent under the employment agreement with Defendant Lumley. More specifically, SEI compensated Lumley at all times during his employment, and provided him with all SEI benefits, resources, systems, and available support.

On May 3, 2018, Defendant Lumley resigned from SEI to commence employment with Apex. As such, Lumley is in violation of the covenant not to compete set forth in his employment agreement with SEI, and has commenced employment with a direct competitor of SEI. (See Affidavit of James Cipriano, attached to the Complaint as Exhibit "D").

Prior to resigning from SEI, Defendant Lumley had three meetings between January and February 2018 with representatives of GenStar Capital Management, LLC, an affiliate of Apex. (See Affidavit of James Cipriano, attached to the Complaint as Exhibit "D" at pg.1). It is believed, and therefore averred, that Defendant Lumley disclosed or intends to disclose SEI's confidential business proprietary information to GenStar and Apex to the disadvantage of SEI, and that Lumley's use and disclosure of such information was a reason for Apex's offer of employment. It is further believed, and therefore averred, that Defendant Lumley has or will contact SEI customers and prospective clients on behalf of Apex, in direct violation of his Employment Agreement.

Apex was made aware of the terms of Defendant Lumley's employment agreement with SEI, including the prohibition against disclosure of confidential information, the non-solicitation clause, and the non-compete agreement. Apex nonetheless employed Defendant Lumley with knowledge that the nature of his position would violate his contractual obligations to SEI. The SEI Investment Manager Services Division is an important part of SEI's business, and Apex's improper employment of Defendant Lumley, despite knowledge of the Lumley's contractual obligations to SEI, has caused and threatens to cause significant damage to SEI in the form of lost revenue to a $12 million line of business.

Since his resignation, SEI has repeatedly attempted to negotiate a resolution to this matter with Lumley and Apex. SEI has sought to preclude Lumley and Apex from using SEI's proprietary information unlawfully. Despite these good faith efforts, counsel for Lumely and Apex have refused any agreement to limit Lumley's existing and on-going breach of his obligations. (See Exhibit 2, attached hereto).

## III. ARGUMENT

As this Court has recognized, a preliminary injunction may be awarded when the plaintiff has demonstrated (1) a likelihood of success on the merits; (2) irreparable harm by the denial of injunctive relief; (3) granting relief will not result in greater harm to the Defendant, and (4) the public interest favors the injunction.[1] This Court may therefore grant SEI's motion for a preliminary injunction because: (1) SEI is likely to succeed on the merits of its breach of contract, breach of fiduciary duty, unfair competition and tortious interference with contractual relations claims; (2) there is significant risk of irreparable harm to SEI absent injunctive relief;[2] (3) the balance of hardships weighs in SEI's favor, and; (4) the public interest favors the injunction.[3]

### *A. SEI is Likely to Succeed on the Merits of its Claims against Defendants*

First, SEI is likely to succeed on the merits of its claims against Defendants. Defendant John Lumley has a valid and duly executed contract of employment with SEI. Mr. Lumley's employment contract includes, among other things, valid and enforceable covenants not to compete, not to disclose, and not to solicit.

---

[1] Plate Fabrication & Machining Inc. v. Beiler, 2006 U.S. Dist. LEXIS 52, at *11 (E.D. Pa. 2006).

[2] "Grounds for an injunction are established where the plaintiff's proof of injury ... foreshadows the disruption of established business relations which would result in incalculable damage should the competition continue in violation of the covenant. The effect of such disruption may manifest itself in a loss of new business not subject to documentation, the quantity and quality of which are inherently unascertainable. Consequently, characterized as an irreparable injury for purposes of equitable relief." West Penn Specialty MSO, Inc v. Nolan, 737 A.2d 295 at 299 (Pa. Super 1999).

[3] "The pubilc interest supports the issuance of a preliminary injunction... because enforcement of the covenant promotes ethical business practices." Beiler, 2006 U.S. Dist. LEXIS 52, at *27.

Under Pennsylvania law, covenants are enforceable if they are (1) ancillary to the employment relationship; (2) supported by adequate consideration; (3) reasonably limited in time and geographic scope; and (4) reasonably designed to safeguard a legitimate interest of the former employer.[4] The covenants in Mr. Lumley's agreements clearly meet these standards. First, It is clear that the covenants are ancillary to the employment relationship, as they arose out of Mr. Lumley's employment agreement with SEI. Next, Mr. Lumley's employment with SEI is adequate consideration under Pennsylvania law.[5] Further, the covenant is reasonably limited in time and geographic scope, as Mr. Lumley is only restricted from working for a competitor of SEI for a period of (2) two years; SEI and Apex are nationwide providers of investment management services and therefore compete everywhere. Last, the covenant is reasonable designed to safeguard legitimate interests of SEI.[6]

Lumley's position at SEI as Sales Director gave him access to confidential information that is essential to SEI's business. The business proprietary information and trade secrets that Defendants Lumley received during the course of his employment with SEI are valuable to the company and "legitimate interests protectable through a restrictive covenant."[7] This Court has

---

[4] Fishkin v. Susquehanna Partners, G.P., 2006 U.S. Dist. LEXIS 34862 (E.D. Pa. 2006)(citing to Gagliardi Bros. v. Caputo, 538 F. Supp. 525, 527 (E.D. Pa. 1982)).

[5] "In Pennsylvania, when a restrictive covenant is contained in the initial contract of employment, consideration for the restrictive covenant is the job itself." Graphic Mgmnt Assoc. v. Hatt, 1998 U.S. Dist. LEXIS 3949, at *34-35 (E.D. Pa. 1998).

[6] Pennsylvania Courts have stated that "trade secrets of an employer, customer goodwill, and specialized training skills acquired from an employer are all legitimate interests protectable through a general restrictive covenant." Thermo-Guard, Inc. v. Cochran, 596 A.2d 188, 193-194 (Pa. Super. 1991).

[7] Hatt, 1998 U.S. Dist. LEXIS 3949, at *37.

noted that such information is recognized in Pennsylvania as a legitimate business interest of the employer that may be protected through the use of a restrictive covenant.[8]

Lumley's new position with Apex as Product Head directly competes with SEI, which was obtained shortly after Lumley held a series of meetings with an affiliate of Apex, GenStar. It is therefore reasonably believed that Lumley has used, is using and will continue to use confidential business proprietary information obtained at SEI for the benefit of his new employer Apex, and to the detriment of SEI. It is therefore likely that SEI will prevail on its claims against Defendant Lumley for breach of contract, breach of fiduciary, and unfair competition by nature of Defendant Lumley's violation of his contractual agreement with SEI.[9]

Further, it is likely that SEI will prevail against Defendant Apex in its tortious interference with a contractual relation claim, as Apex was made aware of Defendant Lumley's contractual obligations to SEI, was aware that hiring him as Product Head would violate these obligations. Apex chose to hire him despite these violations. Further, it is believed and therefore averred, that Apex, knowing that hiring John Lumley would violate his contractual obligations to SEI, offered to cover the cost of defending John Lumley in the inevitable action to enforce said contractual obligations. (See Affidavit of James Cipriano, attached to the Complaint as Exhibit "D" at pg.2)

For the reasons set forth above, it is likely that SEI will succeed on its claims, satisfying the first requirement needed to the issuance of a preliminary injunction.

---

[8] "The types of interests that have been recognized in the context of a non-competition covenant include trade secrets or confidential information, unique or extraordinary skills, customer goodwill, and investments in an employee specialized training program." Beiler, 2006 U.S. Dist. LEXIS 52, at *16.

[9] See Coventry First, LLC v. Ingrassia, 2005 U.S. Dist. LEXIS 13759 (E.D. Pa. 2005); Prison Health Servs. v. Umar, 20002 U.S. Dist. LEXIS 12288 (E.D. Pa. 2002).

### *B. There is a Significant Risk of Irreparable Harm to SEI*

Next, there is a significant risk of irreparable harm to SEI. Defendant Lumley's present and on-going violations of his agreement not to compete with SEI threatens business to SEI valued at approximately $12 million. (see Affidavit of James Cipriano, attached to the Complaint as Exhibit "D" at pg. 3.) As Pennsylvania Courts have recognized, the "nature of the irreparable harm resulting from [Lumley's] breach . . is not the initial breach of [the] covenant . . . but rather the threat of the unbridled continuation of the violation and the resultant incalculable damage to [SEI's] business that constitutes the justification for equitable intervention."[10] And as this Court has stated, grounds for irreparable injury also "include a loss of control of reputation, loss of trade, and loss of goodwill."[11] The irreparable harm to SEI is thus not only evidenced by Lumley's initial breach in accepting employment with Apex, but in his continued employment and use of SEI's confidential information to the advantage of SEI's direct competitor, Apex.

Defendant Lumley, in the course of his employment with SEI, was privy to confidential business information, including information regarding current and prospective clients. It was in fact access to such a prospective client, GenStar, that first acquainted Defendant Lumley with his new employer, Defendant Apex. (See Affidavit of James Cipriano, attached to the Complaint as Exhibit "D" at pg.1). Prior to Lumley's resignation, Lumley engaged in several meetings with GenStar which, apparently, led to the offer of employment from Apex. (See Affidavit of James Cipriano, attached to the Complaint as Exhibit "D" at pg.1). It is believed and therefore averred that Defendant Lumley used and will continue to use SEI's confidential proprietary business

---

[10] Umar, 2002 U.S. Dist. LEXIS 12288, at 65; See also John G. Bryant Co. v. Sling Testing Repair, Inc. 471 Pa. 1, at 7 (Pa. 1977).

[11] Beiler, 2006 U.S. Dist. LEXIS 52, at *26.

information for the benefit of his new employer Apex. Such misuse of SEI's information will result in the irreparable harm recognized by this and other courts in this jurisdiction.

### *C. The Balance of Hardships Weighs in SEI's Favor*

Next, the balance of hardships weighs in SEI's favor. Defendant John Lumley's contractual obligations to SEI are not unduly burdensome. Defendant Lumley was offered a highly lucrative executive position with substantial benefits in exchange for his promise to safeguard SEI's confidential information. The Employment Agreement does not preclude Defendant Lumley from continuing his employment in the financial services industry, so long as said employment is not directly competitive to SEI or does not otherwise disadvantage SEI unfairly. Further, the Employment Agreement only restricts his employment for a period of two (2) years after his final date of employment with SEI. In exchange for these covenants, SEI employed Lumley, paid him a salary and benefits, and provided him with support.

In Pennsylvania, the burden is placed on the challenging party to show that the restrictive covenant is unreasonable.[12] In determining the reasonableness, the court "must balance the interest the employer seeks to protect against the interest of the employee in being able to earn a living in his chosen occupation."[13]

Defendant Lumley could obtain employment within the financial services industry that does not directly compete with SEI.[14] On the other hand, SEI will suffer irreparable harm if

---

[12] "It is the defendant's burden to show that the scope of the restrictive covenant not to compete is unreasonable." Hatt, 1998 U.S. Dist. LEXIS 3949, at *35.

[13] Ingrassia, 2005 U.S. Dist. LEXIS 13759, at *20.

[14] Courts have found that a restriction within a five-state region for three years allowing the defendant to work in any field but the one from in which his former employer competes was reasonable. See Ingrassia, 2005 U.S. Dist. LEXIS 13759 at 33. The Covenant SEI seeks to enforce against Mr. Lumley, by contrast, permits him to work in the financial services, so long as

Defendant Lumley continues to divulge confidential and proprietary business information obtained during his employment at SEI to Apex. This harm will be in the form of lost business, damage to prospective business, and a competitive disadvantage in the market place, all of which Pennsylvania has recognized as irreparable harm.[15] Therefore, the balance of hardships weighs in SEI's favor.

### *D. The Requested Injunction is Not Adverse to Public Policy*

Finally, the requested injunction is not adverse to public policy. "[I]t is generally in the public interest to uphold an agreement freely entered into by the parties."[16] As noted above, SEI complied with its obligations under the Employment Agreement, providing Defendant Lumley employment, a salary, benefits, and the requisite working conditions necessary for him to fulfill his obligations to the company. The restrictions on Defendant Lumley's post-employment activities are reasonably necessary to protect SEI's legitimate interests, and do not preclude Lumley from obtaining a job in the financial services industry not competitive with SEI. Lumley is simply restricted from working in a role that directly competes with SEI, which his position at Apex does.[17] As this court has recognized, the purpose of the injunction of this kind is "no more than enforce a contractual obligation for a time period that is sufficient to protect [an employer's] legitimate business interest."[18]

---

he does not directly compete with SEI, and only restricts his activities for two years after his employment with SEI.

[15] See Sling Testing, 471 Pa. 1.

[16] See Ingrassia, 2005 U.S. Dist. LEXIS 13759 at 34.

[17] Once an employer "invests in providing an employee with these opportunities, it is entitled to a buffer period before that employee ca use that knowledge to compete with it." Fishkin, 2006 U.S. Dist. LEXIS 34862.

[18] Beiler, 2006 U.S. Dist. LEXIS 52, at *11.

Given Defendant Lumley's access to confidential and proprietary business information at SEI, his employment with Apex, and use of said information, would create a competitive disadvantage and hurt SEI in the market. The restrictions agreed to by Lumley in his Employment Agreement, attached hereto as Exhibit "B", are reasonable and not adverse public policy. Further, the public interest supports the issuance of a preliminary injunction in cases involving non-compete agreements, as such covenants promote ethical business practices.[19]

## IV. CONCLUSION

For all these reasons, The Court should grant SEI's motion for a Preliminary Injunction enjoining Defendants from violating the Employment Agreement. SEI therefore respectfully requests The Court issue an order consistent with the proposed order attached hereto.

Respectfully Submitted,

/s/ Hilary Flack, Esquire
JOHN P. QUINN, ESQUIRE
Attorney I.D. No. 85239
HILARY FLACK, ESQUIRE
Attorney I.D. No. 320724
Marshall Dennehey Warner
Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2883

Dated: July 20, 2018

[19] Id. at 27.

**CERTIFICATE OF SERVICE**

I, Hilary Flack, Esquire, do hereby certify that a true and correct copy of Plaintiff's Motion for Preliminary Injunction was electronically filed with the Court this date and served via regular mail to the following:

Lawrence G. McMichael
Dilworth Paxson
1500 Market Street
Suite 3500E
Philadelphia, PA 19102
lmcmichael@dilworthlaw.com
*Counsel for Defeandants*

Respectfully Submitted,

/s/ Hilary Flack, Esquire
JOHN P. QUINN, ESQUIRE
Attorney I.D. No. 85239
HILARY FLACK, ESQUIRE
Attorney I.D. No. 320724
Marshall Dennehey Warner
Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2883

Dated: July 20, 2018