**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SEI INVESTMENTS COMPANY,<br>*Plaintiffs,*<br>v.<br>JOHN LUMLEY AND APEX FUND SERVICES,<br>*Defendants.* | Civil Action No.: 2:18-cv-02978-JS |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO ENFORCE THE SETTLEMENT AGREEMENT**

BRACH EICHLER, LLC
101 Eisenhower Parkway, Suite 201
Roseland, NJ 07068
(973) 228-5700
(973) 618-5972
*Attorneys for Defendants John Lumley and Apex Fund Services*

Of counsel and on the brief:
Anthony M. Rainone, Esq. (*pro hac vice*)

On the brief:
Autumn M. McCourt, Esq.

## PRELIMINARY STATEMENT

Defendants John Lumley and Apex Fund Services (collectively "Defendants") respectfully move this Court to grant this motion to enforce the settlement agreement reached between the parties. The parties to this case reached a settlement as reflected in the email exchanges between the parties and the written settlement agreement that was specifically approved, in a written email, by Plaintiff. Plaintiff, however, then attempted to change the terms it had previously approved in a written email, which is not a basis to avoid the settlement agreement that was reached.

Based upon the foregoing, Defendants respectfully request the Court grant this motion to enforce the settlement agreement and dismiss this case with prejudice and without costs.

**STATEMENT OF FACTS**

The following facts come from the Declaration of Anthony M. Rainone, Esq. submitted herewith.

After settlement talks failed before Chief Magistrate Judge Caracappa, U.S.M.J., the parties appeared at the Rule 16 Initial Conference before Chief District Judge Sanchez. After that conference, the attorneys for the parties continued settlement talks and those talks culminated in a settlement agreement, memorialized by email and by a written and approved settlement agreement.

On January 18, 2019, Defendants emailed Plaintiff stating "John – have not heard from you since we spoke last Friday (I believe that was the day). Are we done?" (Rainone Decl. Ex. 1). In response, Plaintiff wrote:

> We are agreed Anthony. I just heard from my client and was about to call. We will accept that Wellington and Highline are off the list if the other 48 are within the non-solicitation. All other terms of the previous agreement remain the same:
>
> Non-disparagement, confidentiality, no solicitation of employees for one year from termination, $30,000 without admitting or denying liability, 48 non-solicitation prospects.
>
> Do you want to draw up a draft settlement or should I start?

(*Id.*). Defendants responded that they would put together the written agreement and keep it simple. (*See id.*).

On January 21, 2019, after preparing the written settlement agreement, Defendants emailed it to Plaintiff. (*See* Rainone Decl. Ex. 2). The draft included 1 year non-solicitation of a list of 48 companies running from the end of Defendant Lumley's employment at Plaintiff as was agreed. (*Id.*). In Defendants' email, they asked Plaintiff counsel to review it and make sure they had the form of agreement that the attorneys agreed were the terms before sending it on to the clients.

On January 25, 2019, having not heard back from Plaintiff, Defendants emailed Plaintiff asking it to get the matter wrapped up. (*See* Rainone Decl. Ex. 3). In response, by email dated January 28, 2019, Plaintiff advised he would get back to Defendants that day. (*Id*.).

On January 29, 2019, by reply email after having a full week to review the draft, Plaintiff sent a few minor comments to the draft (none involving the one year non-solicitation of certain companies). (*See* Rainone Decl. Ex. 4). In the email, Plaintiff wrote "I had some minor comments. Otherwise, I believe that this is the agreement, subject to my client's review. Please review my comments and we can send to our respective clients for approval." Plaintiff did *not* have any comments or changes to the first paragraph of the agreement – which was the non-solicitation provision. The same day (January 29, 2019), Defendants replied by email and approved the comments/redlines that Plaintiff had made to the settlement agreement document and the parties agreed to get the document on to their clients for approval and execution. (*See* Rainone Decl. Ex. 5).

On February 1, 2019, Defendants emailed Plaintiff and advised that Defendants were prepared to sign the document and asking about Plaintiff's status. (*See* Rainone Decl. Ex. 6). Plaintiff, however, did not respond. Thus, five days later on February 6, 2019, I followed up by email with Plaintiff. (*Id.*). In response, the same day, Plaintiff advised that it was reviewing the document. (*Id*.). Then, the same day, Plaintiff emailed the undersigned and stated "there are a couple of changes that my client caught and that I did not." (*Id*.). Among the items were that Plaintiff now wanted to change the agreed upon one year non-solicitation of certain businesses to a two year non-solicitation and non-competition agreement.

Within minutes of receiving Plaintiff's email Defendants wrote to Plaintiff advising, in response to its position that the proposed changes were not controversial: "we agreed to such a

lengthy [non-solicitation] list on the premise of one year. So this very much will be controversial. I will look at the rest of what you have proposed but we had a deal at the one year and that's the reason my client was amenable to such a lengthy list." (Rainone Decl. Ex. 6). Plaintiff responded that evening: "the restrictive covenant was always two years. That was the agreement. I do not remember ever agreeing to a shorter period." (*Id.*). That claim by Plaintiff, of course, is belied by his acceptance of the written settlement agreement terms (*see* Rainone Decl. Exs. 4-5) and which I reminded Plaintiff of by responsive email that evening. (Rainone Decl. Ex. 6). Plaintiff then wrote, "[t]hat was not what my authority was. I always had authority for two years. That's the employment agreement. I'm sorry I missed the edit, but my client did not agree to one year. That is only three months. We would not have agreed to that." (*Id.*).

Since that time, there have been several email exchanges between counsel since the emails described above but they have been unable to come to a resolution. On February 7, 2019, Defendants wrote to Chief Magistrate Judge Caracappa in an effort to resolve this matter without formal motion practice. On February 8, 2019, Plaintiff responded by letter to Judge Caracappa. No action has been taken by the Court at this time.

Then, by email dated February 11, 2019, at around 6:00 pm, Plaintiff served document demands and requested the depositions of Defendant Lumley and non-party, Peter Hughes, who does not live in the United States. Defendants notified Plaintiff by email that evening that its discovery requests were improper in light of the settlement that was reached between the parties.

Based upon the foregoing, Defendants now move the Court to enforce the settlement agreement to bring this matter to an end as the parties have already agreed.

## LEGAL ARGUMENT

### I. SETTLEMENT AGREEMENTS ARE ENFORCEABLE EVEN IN THE ABSENCE OF A SIGNED AGREEMENT AND THIS CASE IS NO EXCEPTION IN LIGHT OF PLAINTIFF'S WRITTEN EMAIL APPROVAL OF THE WRITTEN SETTLEMENT AGREEMENT THAT IT THEN REFUSED TO SIGN

There is a strong public policy favoring settlements. *Wilson v. Chester County Prison, et al.,* 1998 WL 669930, at *2 (E.D.Pa. Sept.28, 1998). This Court has jurisdiction to enforce a settlement between the parties to a pending litigation. *Bershak v. Phila. Gas Works, et al.,* 2001 WL 193702, at *1 (E.D.Pa. Feb.26, 2001); *Rosso v. Foodsales, Inc.,* 500 F.Supp. 274, 276 (E.D.Pa.1980).

Normal contract law principles apply to settlement agreements. *In re Cendant Corp. Prides Litig.,* 233 F.3d 188, 193 (3d Cir.2000); *Thomas v. Univ. of Pa.,* 2007 WL 2891739, at *2 (E.D.Pa. Oct.2, 2007). "As with any contract, it is essential to the formation of a settlement agreement that 'the minds of the parties should meet upon all the terms, as well as the subject matter, of the [agreement].'" *Thomas,* 2007 WL 2891739, at *2 (quoting *Mazzella v. Koken,* 559 Pa. 216, 739 A.2d 531, 536 (Pa.1999)). An agreement is valid if "the parties mutually assent to the terms and conditions of the settlement." *Main Line Theatres, Inc. v. Paramount Film Distrib. Corp.,* 298 F.2d 801, 803 (3d Cir.1962).

Settlement agreements are enforceable even in the absence of a writing. As this Court has stated:

> Under Pennsylvania law, "[a]n agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of writing." *Green v. John H. Lewis & Co.,* 436 F.2d 389, 390 (3d Cir.1970); *Raie v. City of Philadelphia,* 2003 U.S. Dist. LEXIS 6602, at *6-7 (E.D. Pa. April 1, 2003); *Orta v. Conway Transp., et al.,* 2002 U.S. Dist. LEXIS 19302, at *2-3 (E.D.Pa. Oct. 8, 2002) ("[A] settlement agreement does not need to be reduced to writing to be enforceable") (citations omitted). A trial court before whom a

> case is pending may enforce a settlement agreement voluntarily undertaken and assented to by the parties. *See Raie,* 2003 U.S. Dist. LEXIS 6602, at *7 (citing *Morris v. Gaspero,* 522 F.Supp. 121, 125 (E.D.Pa.1981)).

*Veritext/PA Reporting Co. L.L.C. v. E-Reporting Stenographic Affiliates of Pennsylvania Inc.*, 2006 WL 3524375, at *2 (E.D. Pa. Dec. 5, 2006)

This Court has also stated:

> No writing is required at the time of settlement for the agreement to be enforceable. Compu Forms Control, Inc. v. Altus Group, Inc., 574 A.2d 618 (Pa. Super. 1990)(settlement agreement enforceable where placed on the record in court but not reduced to writing). The court can enforce the terms mutually agreed upon by the parties, where supported by the evidence, even if it is clear that either party changed their mind before the agreement could be memorialized in writing. Wyndmoor Learning Ct. v. City of Wilmington, No. CIV. A. 9304217, 1996 WL 117471, at *6 (E.D. Pa. Mar. 12, 1996).

*Balagtas v. W.M. Jackson TKG., Inc.*, 2015 WL 13738988, at *3 (E.D. Pa. Aug. 11, 2015), *report and recommendation adopted*, 2015 WL 6511272 (E.D. Pa. Oct. 28, 2015).

This case is similar to and has stronger facts than *Transp. Int'l Pool, Inc. v. Alternative Transp., Inc.,* 2008 WL 2550598, at *1 (E.D. Pa. June 25, 2008), *reconsideration denied*, 2008 WL 11366455, at *1 (E.D. Pa. July 30, 2008), where the Court granted a motion to enforce a settlement agreement that was based upon emails between the attorneys' for the parties. The Court found:

> First, Sinclair agreed to the settlement between TIP and RTI. Mangold sent Sinclair an email on March 11, 2008 with the essential terms of the settlement reached between TIP and RTI. Sinclair not only failed to deny the terms as those agreed to, but thereafter referenced the parties' exchange as a "settlement." The parties entered into an agreement because the parties understood and mutually assented to the terms of the settlement agreement. *Main Line Theatres, Inc.,* 298 F.2d at 803. An agreement voluntarily entered into is binding on TIP and RTI, despite not being made in court and not confirmed in writing. *Green,* 436 F.2d at 390; *Thomas,* 2007 WL 2891739, at *2; *Suber,* 2006 WL 1582312, at *3. Thus, Mangold's statements regarding the need to "wrap up"

> the document and get it signed are irrelevant to whether a settlement was reached.

*Transp. Int'l Pool, Inc.*, 2008 WL 2550598, at *6 (E.D. Pa. June 25, 2008).

This case involves not only email exchanges between the parties memorializing the fact of a settlement, and the terms of the settlement, but also Plaintiff (who now seeks to avoid it) approving the specific written settlement agreement document. It was only after all of the foregoing that Plaintiff then had an apparent change of heart and sought to change one of the terms it has already approved. Specifically, Plaintiff tried to change the one year customer non-solicit to two years. But that is contrary to the agreement that was reached.

This case was settled and the Court should grant this motion to enforce the settlement agreement and dismiss the case with prejudice and without costs so that the parties can move forward with their respective businesses.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court grant the motion to enforce the settlement agreement and dismiss this case with prejudice and without costs, and for such other and further relief as this Court deems just, equitable, and proper.

Dated: February 12, 2019

Respectfully submitted,

/s/ Autumn M. McCourt

Autumn M. McCourt, Esq.